UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TORRI MONTAGUE DURDEN,

                    Plaintiff,

v.

LOPEZ, *et al.*,

                    Defendants.

_____/

Civil Action No. 22-10398

Sean F. Cox
United States District Judge

David R. Grand
United States Magistrate Judge

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 24)

*Pro se* plaintiff Torri Montague Durden ("Durden"), an incarcerated person, brings this civil rights action pursuant to 42 U.S.C. § 1983, against employees of the Michigan Department of Corrections ("MDOC"), alleging claims of First Amendment retaliation and Eighth Amendment failure to protect. (ECF No. 1). This case was referred to the undersigned for all pretrial matters pursuant to 28 U.S.C. § 636(b). (ECF No. 12).

On November 14, 2022, MDOC employees Sam Morgan, Roland Price, and Larry Ferns (collectively, "Defendants") filed a Motion for Summary Judgment on the Basis of Exhaustion. (ECF No. 24).[1] Durden then filed a response, and Defendants filed a reply. (ECF Nos. 27, 28).

---

[1] Durden's claims against the remaining MDOC defendant Alberta Lopez are not at issue in the instant motion for summary judgment, which expressly states that "MDOC Defendant Lopez concedes that there are issues of fact as to whether Durden exhausted administrative remedies against her." (ECF No. 24, PageID.110 n.2).

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody.  *See* E.D. Mich. L.R. 7.1(f).  Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

## I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(ECF No. 24)** be **GRANTED**.

## II.   REPORT

### A.   Background

Durden is a MDOC prisoner who is currently confined at the St. Louis Correctional Facility ("SLF") in St. Louis, Michigan.  He brings this § 1983 civil rights action, alleging he was retaliated against for exercising his First Amendment rights, and that Defendants failed to protect him from certain acts of physical harm resulting from such retaliation, in violation of the Eighth Amendment.  At the time of the events at issue in his complaint, Durden was housed at the Saginaw Correctional Facility ("SRF") in Freeland, Michigan.

In his complaint, Durden alleges that, on February 25, 2021, Correctional Officer Alberta Lopez ("Lopez") wrote him a sexual misconduct report after claiming that Durden "put words of sexual nature in her coat pocket."  (ECF No. 1, PageID.7).  Lopez also allegedly "began to tell inmates that [Durden] was [at SRF] for having sex with kids and that [he] was a child molester."  (*Id.*).  Durden alleges that Lopez "directly solicited violence against [him]" with this "lie" and by also offering inmates drugs in exchange for hurting him.  (*Id.*).  Ultimately, Lopez's acts of retaliation allegedly caused Durden to be

(1) assaulted on May 18, 2021; (2) stabbed in the neck on May 30, 2021; and (3) stabbed multiple times on June 7, 2021. (*Id.*). In one instance, an assailant attacked Durden while yelling, "you like f---ing kids." (*Id.*). As such, Durden claims that "Lopez retaliated against [him] for exercising [his] [First] [A]mendment right to freedom of speech." (*Id.*).

As to the Defendants specifically, Durden alleges that, "following the second assault" on May 30, 2021, he was "interviewed" by ADW Sam Morgan ("Morgan") and Inspector Larry Ferns ("Ferns"), during which Durden told them that he "did not feel safe in any unit due to Lopez." (*Id.*). However, Morgan and Ferns "ignored" and "discredited" his concerns and sent him "back to the unit." (*Id.*). One week later, on June 7, 2021, Durden was "stabbed 7 times," which "would have been prevented had [Morgan and Ferns] protected [him] as [he had] asked." (*Id.*). Durden was taken to "medical," where Inspector Roland Price ("Price") "approached and asked [him] why [inmates] were after [him]." (*Id.*). Durden said it was because of Lopez, to which Price responded that it was "just not true" and patronized him. (*Id.*). Later, on June 13, 2021, Lopez "taunted" Durden by stating, "that's why I got you stabbed," and pulling up a video on the computer showing Durden "being stabbed" and "zoom[ing] in for the other inmates to see." (*Id.*).

Based on the above allegations, Durden claims that he suffered injuries in the form of a "scapular fracture" resulting in mobility issues, as well as multiple stab wounds, including in his "neck." (*Id.*, PageID.8). As a result, he seeks monetary damages. (*Id.*).[2]

---

[2] Although immaterial to the legal issues before the Court, it is worth noting that Defendants attach to their reply brief evidence indicating that Durden had continually refused efforts to place him in protective custody during the relevant time period. For example, a "Request for Protection/Investigation Report" dated June 7, 2021, expressly notes that "Durden [] was assaulted

As to the exhaustion of administrative remedies, Durden alleges in his complaint

that he filed a grievance at SRF claiming "[t]hat Lopez was telling inmates I was a child

molester and I was being threatened and harassed." (*Id.*, PageID.10). He claims that his

grievance was "[d]enied at all steps," and that "[a]ll steps [of] the grievance process [were]

completed." (*Id.*, PageID.11).[3]

Defendants now move for summary judgment on Durden's claims against them,

arguing that he failed to properly exhaust his administrative remedies before filing the

instant lawsuit. (ECF No. 24).

**B.      Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary

judgment if "the movant shows that there is no genuine dispute as to any material fact and

---

on 5-18-21 by [inmate] Dorie . . . [and] was assaulted on 5-30[-]21 by [inmate] Babb[.] . . . Durden refused protective custody after the assault from prisoner Dorie. . . . On 5/30/2021, after being assaulted by prisoner Babb, Lt. Ehinger asked [] Durden if he wanted Protective Custody and [] Durden refused, according to the CAJ-570. [] Durden was then placed back in his general population cell . . . where he resided until last evening. Due to the seriousness and continued discontent amongst the prisoners, [] Durden will remain in Segregation when he is returned from outside the hospital." (ECF No. 28-2, PageID.169). Defendants also attach a Step I grievance Durden filed on June 11, 2021, in which he complains about his eventual *involuntary* placement into protective custody: "my 14th amendment due process clause is being violated, I was stabbed and am in [protective custody] involuntarily . . . I was stabbed, a circumstance I had no control over and now is forced into [protective custody]. . ." (*Id.*, PageID.163).

[3] Attached to Durden's complaint are several exhibits, including affidavits from two prisoners attesting that Lopez told them Durden was a child molester and solicited them to assault him in exchange for drugs (ECF No 1, PageID.16-17); hospital and MDOC medical records of his injuries (*id.*, PageID.18-34); and a Class I Misconduct Hearing Report reducing the Sexual Misconduct charge to a "Insolence" charge because Durden admitted to placing a note in Lopez's sweater, but the note's content, while "inappropriate," was not "sexual in nature" (*id.*, PageID.35-36). Notably, none of the attached exhibits are grievance documents, nor do these exhibits contain any specific references to defendants Morgan, Ferns, or Price.

the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also*

*Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th

Cir. 2011).  A fact is material if it might affect the outcome of the case under governing

law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining

whether a genuine issue of material fact exists, the Court assumes the truth of the non-

moving party's evidence and construes all reasonable inferences from that evidence in the

light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461,

464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court

of the basis for its motion and must identify particular portions of the record that

demonstrate the absence of a genuine dispute as to any material fact.  *See Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir.

2009).  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving

party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.,*

256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.,* 475 U.S. 574, 587 (1986)).  In response to a summary judgment motion, the

opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact

will disbelieve the movant's denial of a disputed fact' but must make an affirmative

showing with proper evidence in order to defeat the motion."  *Alexander*, 576 F.3d at 558

(internal quotations omitted).

## C.     Analysis

In their motion, Defendants argue that summary judgment is warranted on Durden's

claims against them because Durden failed to properly exhaust his administrative remedies,

as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (ECF

No. 16, PageID.68). The Court agrees that Defendants are entitled to summary judgment.

### *The PLRA's Exhaustion Requirement*

Under the PLRA, a prisoner may not bring an action, "under [§ 1983] or any other

Federal law," to challenge his conditions of confinement until all available administrative

remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85

(2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency

by encouraging the resolution of claims at the agency level before litigation is commenced,

and it protects administrative authority by allowing the agency an opportunity to correct its

own mistakes before being haled into federal court. *See Woodford*, 548 U.S. at 89. The

Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.*

at 93. Proper exhaustion requires "compliance with an agency's deadlines and other

critical procedural rules." *Id.* at 90. In determining whether a plaintiff has properly

exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison

grievance process itself." *Jones v. Bock*, 549 U.S. 199, 200 (2007). Failure to exhaust is

an affirmative defense that must be raised by a defendant, and on which the defendant bears

the burden of proof. *See id.* at 216; *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019).

### The MDOC's Exhaustion Procedures

In Michigan's correctional facilities, prisoner grievances are governed by MDOC

Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy"). (ECF

No. 24-2, PageID.116). According to the Policy, "[g]rievances may be submitted regarding

alleged violations of policy or procedure or unsatisfactory conditions of confinement which

directly affect the grievant, including alleged violations of this policy and related

procedures." (*Id.* at ¶ F).

A state prisoner must first complete the process outlined in the Policy – including

pursuing a grievance through "all three steps of the grievance process" – before he can file

a lawsuit challenging the alleged unlawful conduct. (*Id.* at ¶ C). The Policy provides that

if a prisoner cannot resolve his dispute with the staff member involved, he has five business

days to file a Step I grievance. (*Id.* at ¶¶ Q, W). If the prisoner is dissatisfied with the Step

I response, he may submit a grievance appeal to the Step II Grievance Coordinator within

ten business days after receipt of the Step I response, or if no timely response is received,

within ten business days of the date the response was due. (*Id.* at ¶ DD). If the grievant is

dissatisfied with, or does not receive, a Step II response, he has ten business days within

which to file a final appeal at Step III. (*Id.* at ¶ HH).

### *Durden Fails to Raise a Material Question of Fact as to Whether He Properly Exhausted a Grievance Against Defendants*

In their motion, Defendants argue that, while "there are issues of fact as to whether

Durden exhausted administrative remedies against [MDOC Defendant Lopez]," he failed

to exhaust through Step III any claims against defendants Morgan, Price, or Ferns, as the

record reflects that he filed no grievances during the relevant time period raising "the failure-to-protect claims asserted in the complaint," much less specifically naming Morgan, Price, or Ferns.  (ECF No. 24, PageID.110-11).  Attached to their motion is a copy of Durden's "MDOC Prisoner Step III Grievance Report," along with salient grievance documents, which show that Durden pursued through Step III five grievances during the relevant time period, none of which raise failure-to-protect claims against defendants Morgan, Price, or Ferns as alleged in the complaint.  (ECF No. 24-3, PageID.127-28).[4]

Durden does not dispute that he failed to exhaust through Step III any relevant grievances raising failure-to-protect claims against the Defendants.  (ECF No. 27).  Instead, he appears to argue that he did in fact file a Step I grievance but that it was "not processed due to staff interference," as "[o]ften authority figures within administration disregard legitimate grievances to put potential plaintiffs in position to fail the exhaustion

---

[4] *See* ECF No. 24-3, PageID.131-32 (SRF-21-03-0407-28B against Lopez for implying to inmates Durden was a child molester), PageID.134-35 (SRF-21-03-0402-28B against Lopez for soliciting violence against Durden), PageID.137-38 (SRF-21-03-0386-27A against "Inspector" for "reading [his] outgoing legal mail"), PageID.140-41 (SRF-21-03-0340-27A against "Sgt. Bidde" for not giving Durden a proper hearing on misconduct report), PageID.144-45 (SRF-21-03-0291-28C against "Sgt. Bidde" for not providing proper hearing).  The Court notes that Durden's Step III Report reflects another grievance filed on June 13, 2021 (SRF-21-06-0721-28e), which was received at Step III on October 14, 2021.  (ECF No. 24-3, PageID.127).  Although there are no details as to its underlying content, a review of Durden's complaint and response indicates that such grievance is not relevant to his claims against defendants Morgan, Ferns, and Price, as Durden alleges he filed a grievance for failure to protect against Morgan and Ferns on the day after they interviewed him following the May 30th assault and a week *prior* to his stabbing on June 7, 2021. (*See* ECF No. 1, PageID.7 ("Following the second assault I was interviewed by [] Morgan and [] Ferns . . . They ignored my claims and sent me back to the unit although I told them of what was going on and that I didn't feel safe . . . A week later I was stabbed 7 times on 6/7/21, which would have been prevented had they protected me as I asked."); ECF No. 27, PageID.148 ("In fact following the May [30th] stabbing and me being interviewed by defendants Morgan and Ferns[,] I did file a grievance *the following day*, while awaiting my reply the June 7th stabbing occurred . . .") (emphasis added).

requirement." (*Id.*, PageID.148). Specifically, Durden explains that "following the May [30th] stabbing and [his] being interviewed by defendants Morgan and Ferns, [he] did file a grievance the following day," but "while awaiting [his] reply the June 7th stabbing occurred . . ." (ECF No. 27, PageID.148). He contends that he was then "admitted to the hospital and upon return, soon after transferred to [his] current facility [at SLF] and never heard anything pertaining to [his] filed grievance." (*Id.*). In other words, Durden essentially concedes that he did not pursue a grievance against Defendants through Step III, but argues that such failure should be excused given that he was prevented from doing so because he never received any response to the Step I grievance he allegedly filed against them. As explained below, Durden's argument lacks merit.

The U.S. Supreme Court has reiterated that the PLRA's exhaustion requirement hinges on the *availability* of administrative remedies: an inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). Thus, courts have recognized that "although completing [all steps of the grievance process] is a sufficient condition, it is not always a necessary one." *Palmer v. Flore*, 3 F. Supp. 3d 632, 637 (E.D. Mich. 2014); *see also Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (the Sixth Circuit requires an inmate to make affirmative efforts to comply with the administrative procedures and analyzes whether those efforts to exhaust were sufficient under the circumstances). In other words, where a prisoner makes reasonable efforts to exhaust a grievance, and his failure to exhaust is due to the exhaustion process being "unavailable," that failure cannot be grounds for finding his underlying claim to be unexhausted.

A prisoner cannot overcome a properly-supported summary judgment motion simply by asserting that the grievance process was "unavailable."  Rather, as in all cases, the prisoner must make an affirmative showing with proper *evidence* to at least raise a material question of fact on the issue.  *Alexander*, 576 F.3d at 558 (internal quotations omitted).  Because it is undisputed that Durden did not exhaust any relevant grievances, the issue here is whether Durden presented sufficient *evidence* to raise a material question of fact that he made reasonable efforts to exhaust the grievance process, but that the process was "unavailable" to him.  *See, e.g.*, *Young v. Jackson*, No. 12-12751, 2013 WL 8178397, at *8-9 (E.D. Mich. Nov. 13, 2013) (rejecting defendants' failure to exhaust argument where plaintiff provided copies of numerous letters requesting a Step II grievance appeal form from the appropriate grievance coordinator, but allegedly was not provided one); *Graham v. Chicowski*, No. 16-12258, 2017 WL 3097803, at *5 (E.D. Mich. Apr. 18, 2017) (finding that plaintiff raised a question of fact as to the "availability" of the grievance process where he provided copies of several letters he had written and evidence demonstrating that his family made calls and wrote letters on his behalf to advance his grievance).  Durden has simply failed to meet that burden here.

Even assuming Durden filed an initial Step I grievance against Defendants for their alleged failure to protect him from assaults, he presented no evidence from which the Court could conclude that he took reasonable steps to exhaust such grievance, or that the later steps in the grievance process were "unavailable" to him.  This is critical because, as explained above, the Policy requires a grievant to exhaust "all three steps of the grievance process." (ECF No. 24-2, PageID.116, ¶ C).  Durden's response brief makes clear that he

10

took no further actions after filing that initial grievance because he "never heard anything pertaining to [his] filed grievance." (ECF No. 27, PageID.148). But not receiving a response does not mean the grievant cannot take reasonable steps to exhaust his grievance or that the grievance process was "unavailable" to him. Indeed, the Policy makes clear that the mere lack of a Step I response did not absolve Durden of his obligation to pursue his grievance through Steps II and III of the grievance process. The Policy explicitly provides that, if a grievant does not receive a timely Step I response, in order to properly exhaust the grievance, he must still submit a Step II appeal "within ten business days of *the date the response was due*." (ECF No. 24-2, PageID.121, ¶ DD) (emphasis added) (explaining that after filing a grievance, "[a] grievant may file a Step II grievance if s/he is dissatisfied with the response received at Step I *or if s/he did not receive a timely response* . . . within ten business days after the date the response was due.") (emphasis added). Similarly, if the grievant does not receive a timely Step II response, he must still file a final appeal to Step III. (*Id.*, ¶ HH) (explaining that after the Step II submission, "[a] grievant may file a Step III grievance if s/he is dissatisfied with the Step II response *or does not receive a timely response* . . . within ten business days after the date the response was due, including any extensions.") (emphasis added).

Based on the foregoing, Durden fails to raise a material question of fact that he took reasonable actions to exhaust any relevant grievance, or that the three-step grievance process was "unavailable" to him. *Jones*, 549 U.S. at 200. Having not pursued any relevant grievance against defendants Morgan, Price, and Ferns beyond Step I, it is undisputed that

Durden's claims against them are not properly exhausted.  Thus, Defendants' motion for summary judgment on exhaustion grounds (ECF No. 24) should be granted.

## III.    CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(ECF No. 24)** be **GRANTED**.  Should this recommendation be accepted, Durden's only remaining claims will be those against defendant Alberta Lopez based on First Amendment retaliation.


Dated: January 17, 2023                               s/David R. Grand
Ann Arbor, Michigan                                   DAVID R. GRAND
                                                      United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any

objections is to be served upon this magistrate judge. A party may respond to another

party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P.

72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address

specifically, and in the same order raised, each issue presented in the objections.


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of
record and any unrepresented parties via the Court's ECF System to their respective email
or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January
17, 2023.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager