UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TORRI MONTAGUE DURDEN,

        Plaintiff,        Civil Action No. 22-10398

v.        Sean F. Cox
        United States District Judge

LOPEZ, *et al.*,        David R. Grand
        United States Magistrate Judge

        Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANT LOPEZ'S MOTION TO DISMISS (ECF No. 37)**

*Pro se* plaintiff Torri Durden ("Durden"), an incarcerated person, commenced this civil action against various Michigan Department of Corrections' ("MDOC") employees pursuant to 42 U.S.C. § 1983. (ECF No. 1). Durden's sole remaining claim is his First Amendment retaliation claim against MDOC Corrections Officer Alberta Lopez ("Lopez"), in which he alleges that after he told other inmates that Lopez wrote him a sexual misconduct report, she retaliated by soliciting violence against him.[1] The case was referred to the undersigned for all pretrial matters pursuant to 28 U.S.C. § 636(b). (ECF No. 12).

---

[1] On March 16, 2023, the Court dismissed all of Durden's other claims. (ECF Nos. 32, 24). Thus, the Court will limit its discussion of the factual background to his remaining First Amendment retaliation claim.

On March 31, 2023, Lopez filed a Motion to Dismiss. (ECF No. 37). Durden then filed a response, and Lopez filed a reply. (ECF Nos. 40, 41).

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. LR 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs, and it declines to order a hearing.

I.  **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Lopez's Motion to Dismiss **(ECF No. 37)** be **GRANTED.**

II.  **REPORT**

  A.  **Background**

Durden, who is currently incarcerated at the MDOC's St. Louis Correctional Facility, brings this civil rights action against Corrections Officer Lopez. In his complaint, Durden alleges that Lopez "retaliated against [him] for exercising [his] [F]irst [A]mendment [rights] by soliciting violence against [him] resulting in many assaults and injuries." (ECF No. 1, PageID.7). Durden alleges that on February 25, 2021, Lopez wrote him a sexual misconduct report, "claiming [he] put [a note containing] words of sexual nature in her coat pocket." (*Id.*). Durden further alleges that after he was released from segregation, he "told other inmates Lopez wrote [him] a sexual misconduct which resulted in many inmates asking her why or other inquiries pertaining to the misconduct." (*Id.*). He alleges that Lopez "retaliated against [him] for exercising [his] [First] [A]mendment right to freedom of speech" by telling other inmates "that [he] was in here for having sex with kids and that [he] was a child molester … she directly solicited violence against [him]

2

in exchange for drugs." (*Id*.). This allegedly resulted in Durden being (1) assaulted on May 18, 2021; (2) stabbed in the neck on May 30, 2021; and (3) stabbed multiple times on June 7, 2021. (*Id*.). In one instance, an assailant attacked Durden while allegedly yelling, "you like f---ing kids." (*Id*.). Durden claims that due to these acts, he suffered a "scapular fracture" which "still [gives him] mobility issues," as well as multiple stab wounds. (*Id*.). He further alleges that on June 31, 2021, Lopez "taunted" him, saying "that's why I got you stabbed" and zoomed in on a video of him being stabbed "for the other inmates to see." (*Id*.). In support of his claims, Durden attaches two sworn affidavits from inmates attesting that Lopez solicited drugs in exchange for harming Durden, medical records of his injuries, and a Class I Misconduct Hearing Report. (*Id*., PageID.15-37). Based on the above, Durden seeks monetary damages. (*Id*., PageID.8).

Lopez now moves to dismiss, arguing that Durden failed to state a First Amendment retaliation claim upon which relief can be granted. (ECF No. 37).

### B. Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough

3

facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] . . . is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

Analyzing Durden's complaint against this standard, the Court recommends dismissing Durden's First Amendment retaliation claim against Lopez for failure to state a claim.

### C. Analysis

In her motion to dismiss, Lopez argues that Durden's claim against her fails as a matter of law because Durden has not adequately pled the first and third elements of a valid First Amendment retaliation claim. (ECF Nos. 37, 40). A *prima facie* case for First Amendment retaliation involves three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at

4

least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). After careful review of the record and the parties' arguments, the Court agrees that Durden failed to adequately plead sufficient facts to establish the third element of a *prima facie* First Amendment retaliation claim, causation.

To properly analyze the third prong of causation, it is necessary to first identify the protected conduct alleged in Durden's complaint. The parties appear to be at odds as to which specific act Durden is claiming to be the basis for his First Amendment retaliation claim. In her motion, Lopez argues that Durden's act of putting a note containing "words of a sexual nature . . . in Lopez's coat pocket" was not protected conduct because it violated a legitimate prison regulation, as evidenced by Durden's Class I Misconduct Hearing Report finding him guilty of an "Insolence" charge. (ECF No. 37, PageID.216; ECF No. 1, PageID.35-36).² In response to Lopez's motion, Durden asserts that his protected

---

² Lopez notes that "Plaintiff filed nearly the identical Complaint regarding the same incident in E.D. Mich. 2:21-cv-10696, and the Complaint did not survive initial screening." (ECF No. 37). Indeed, in *Durden v. Biddle*, No. 2:21-CV-10696, 2021 WL 2258416, at *2 (E.D. Mich. June 3, 2021), the Honorable Laurie J. Michelson found that, to the extent Durden's complaint could be construed as attempting to raise a First Amendment retaliation claim based on his slipping a note into Lopez's pocket, such claim would be subject to dismissal:

> The Court notes that it does not read the complaint as claiming that Durden was engaged in constitutionally protected conduct when he slipped a note into Lopez's pocket sufficient to state a First Amendment retaliation claim. *See Thaddeus-X v. Blatter*, 175 F.3d, 394 (6th Cir. 1999). In fact, Durden concedes in his complaint that slipping the note into Lopez's pocket constituted unauthorized communication or insolence.

*Durden*, 2021 WL 2258416, at *2. Judge Michelson's analysis similarly applies to the instant case, where Durden's Class I Misconduct Hearing Report confirms that he was found guilty of "Insolence," and so his slipping a note in Lopez's pocket would not constitute protected conduct. (ECF No. 1, PageID.36); *Thaddeus-X*, 175 F.3d at 395 ("if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct' and cannot proceed beyond step one.").

5

conduct was not his placing the note in Lopez's pocket, but rather "telling other inmates that Lopez [writing] [him] a sexual misconduct ticket was why [he] was in segregation." (ECF No. 39, PageID.236). He also argues that "in no way did [his] words intend to cause intimidation or any harm to the defendant. Therefore [his] freedom of speech was protected and were not fighting words." (*Id.*). Lopez replies that "[t]his new claim that Durden told or talked to other prisoners about the misconduct is not protected conduct for First Amendment retaliation purposes" either, as "the Supreme Court has never held that communications between prisoners gives rise to protected speech." (ECF No. 40, PageID.244).[3] Ultimately, however, the Court need not formally address the issue of whether Durden's conversations with inmates about his misconduct ticket satisfies the first

---

[3] It is worth noting that Lopez is misguided in her assertion that, because there is an absence of an affirmative holding that prisoner-to-prisoner communication is protected speech, it necessarily follows that prisoner-to-prisoner communication can *never* constitute protected speech. (*Id.*, PageID.244). The Sixth Circuit has made clear that "First Amendment law is particularly context-driven," *Thaddeus-X*, 175 F.3d at 388, and the cases Lopez cites to in support of her proposition that communications between prisoners are not protected conduct are factually distinguishable. For example, Lopez contends that the Sixth Circuit held in *Clark v. Johnston*, 2014 WL 11070973, at *1 (6th Cir. 2011), that informal prison conversations are not considered protected conduct. A careful reading of the *Clark* opinion contradicts such contention, as the Sixth Circuit expressly stated that the basis for finding inmate Clark's speech was unprotected was "not that his complaint was informally made, but that it has not been shown to have had any merit." *Clark*, 2014 WL 11070973, at *1. Second, Lopez cites to *Treadwell v. Almy*, 2013 WL 6668680, at *6 (W.D. Mich. 2013), as "singl[ing] out prisoner-to-prisoner communication as implicating core penological concerns of prison officials." (ECF No. 40, PageID.244). But she overlooks that *Treadwell* held that a prisoner's communicating to other prisoners that "they are being served tainted food" was not protected speech because *the resulting food waste was a legitimate penological concern*. *Treadwell*, 2013 WL 6668680 at *6 ("The consequences of false or incendiary reports in the prison context are all too obvious. In the present case, food was wasted, causing an adverse effect on the prison budget. In the next case, prisoners could take aggressive action or even riot in response to a report that they are being served tainted food."). As Lopez does not argue here that Durden's conversations with other inmates violated any regulation or was otherwise inconsistent with a penological objective, the holding in *Treadwell* cannot be generalized to the instant case. *See Treadwell*, 2013 WL 6668680 at *6.

6

prong of his First Amendment retaliation claim because, even assuming it constitutes protected conduct, Durden still fails to allege sufficient facts satisfying the third prong of causation.

The third prong of a First Amendment retaliation claim requires a plaintiff to plead facts establishing "a causal connection between the protected conduct and the adverse action." *Thaddeus-X*, 175 F.3d 399; *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) ("the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct."). "[B]are allegations of malice on the defendants' part are not enough to establish retaliation claims," *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001), nor are "[c]onclusory allegations of temporal proximity sufficient to show a retaliatory motive," *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004). Rather, the plaintiff must allege facts to support a conclusion that the protected conduct *caused* the retaliatory action. *Murray*, 84 F. App'x at 556.

In her motion, Lopez argues that "the fact that [Durden] does not allege that Lopez was aware of any of these alleged private conversations between prisoners is fatal to his claim" because Durden "cannot establish the causal connection element in a retaliation claim when the defendant is unaware that [he] engaged in any protected conduct." (ECF No. 40, PageID.245). The Court agrees that Durden has failed to allege sufficient facts to satisfy the causation element of his First Amendment retaliation claim.

Even liberally construed, the only allegation Durden relies on to establish the necessary causation for his claim is that he "told other inmates Lopez wrote [him] a sexual misconduct which resulted in many inmates asking her why or other inquiries pertaining

7

to the misconduct. In which Lopez began telling inmates that I was in here for having sex with kids and that I was a child molester, also along with this lie she directly solicited violence against me… " (ECF No. 1, PageID.7). While such alleged conduct by Lopez is very concerning, Durden alleges no facts whatsoever that Lopez was even aware that he had spoken to any of these inmates who allegedly approached her to "inquire" about his misconduct, much less any facts from which the Court could reasonably infer that the reason Lopez allegedly solicited violence against Durden was to retaliate against him for having told other inmates that she issued him a misconduct ticket.

Indeed, the two inmate affidavits Durden attaches to his complaint in support of his claim actually contradict the notion that it was Durden's conversation with fellow inmates that prompted Lopez's retaliatory behavior. (ECF No. 1, PageID.16-17). The first affidavit from inmate Jacobs avers that it was *Lopez* who first approached Jacobs and "asked [him] did [he] know who Inmate Durden is?", and that Jacobs responded that he did not even know who Durden was at that time. (ECF No. 1, PageID.16) ("[Lopez] then asked me did I know who Inmate Durden is? I told her that I did not. She then said, sure you do, you know everyone. I said I don't know who you have me confused with but I don't really know anyone."). The second affidavit from inmate Vinson-Jackson likewise avers that it was *Lopez* who approached Vinson-Jackson and asked him if he knew Durden before soliciting him to attack Durden. (*Id.*, PageID.17) ("She asked did I know EMO? I told her [I] did not. She described him and mentioning his last name 'Durden' . . . I asked why what's up with him?"). Significantly, Vinson-Jackson's affidavit also speaks to Lopez's reason for her alleged retaliatory actions against Durden, which has nothing to do with

8

Durden's alleged conversations with other inmates: "[Lopez] said, *'[Durden] put some word in my pocket twice* and she locked him up and *found out he's a child molester that[']s why she wrote [Durden] a ticket*. She asked if I can get him f----ed up for her and she'll give me 2 ounces of weed." (*Id.*) (emphasis added). Again, while Lopez' alleged statements are very concerning, ultimately, the affidavits Durden attaches to his complaint belie his contention that it was his *conversations with other inmates* that prompted Lopez to retaliate against him.

In sum, even liberally construed, Durden failed to allege facts establishing a causal link between his alleged conversations with inmates (or any other protected conduct) and Lopez's alleged retaliatory behavior. *See Skinner*, 89 F. App'x at 579-80. Thus, Durden failed to plead any facts showing that his alleged protected conduct was a motivating factor for Lopez's adverse actions against him, *see Murray*, 84 F. Appx. at 556, which means he failed to satisfy the third prong of causation for his First Amendment retaliation claim. Accordingly, such claim should be dismissed.

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Lopez's Motion to Dismiss **(ECF No. 37)** be **GRANTED**.

Dated: August 31, 2023  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

9

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 31, 2023.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager